# 25-369-cv

## United States Court of Appeals

*for the*

## Second Circuit

ELVIRA VEKSLER,

*Plaintiff-Appellant,*

— v. —

WIPRO, LLC,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

ANDREW L. MARGULIS
JUNG PARK
RYANNE A. HANKLA
ROPERS MAJESKI
*Attorneys for Defendant-Appellee*
800 Third Avenue, 29th Floor
New York, New York 10022
(212) 668-5927

CP COUNSEL PRESS   (800) 4-APPEAL • (382440)

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Wipro, LLC is a non-governmental entity wholly owned by Wipro Limited, which is publicly traded under the symbol "WIT." Wipro Limited has no parent corporation and no publicly traded corporation currently owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ iii

I. PRELIMINARY STATEMENT ................................................... 1

II. STATEMENT OF THE ISSUES ................................................. 2

III. STATEMENT OF THE CASE ................................................... 2

    A. PROCEDURAL HISTORY ............................................... 2

IV. STATEMENT OF FACTS ......................................................... 3

V. STANDARD OF REVIEW ........................................................ 6

VI. SUMMARY OF ARGUMENT ................................................... 6

VII. ARGUMENT .............................................................................. 8

    A. VEKSLER CANNOT SHOW A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER WIPRO ACTED INTENTIONALLY ........................................................ 8

        1. Veksler's Evidence ............................................. 10

        2. Wipro's Document Production ............................ 11

        3. Conflicting Expert Reports ................................. 13

    B. VEKSLER'S ARGUMENT THAT THE DISTRICT COURT ERRED IN FINDING THAT THE INSTALLATION OF THE SOFTWARE IN QUESTION REQUIRED INTENTIONAL CONDUCT, AS OPPOSED TO THE ACTIVE MONITORING FUNCTION OF THE SOFTWARE ONCE INSTALLED ON VEKSLER'S COMPUTER ALSO FAILS ............................................... 15

    C. VEKSLER'S CLAIMS AGAINST WIPRO WOULD STILL FAIL AS A MATTER OF LAW EVEN IF THERE WAS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER WIPRO ACTED INTENTIONALLY ........................... 17

        1. Veksler's ECPA Claim Fails as a Matter of Law .................... 17

        2. Veksler's SCA Claim Fails as a Matter of Law ...................... 19

i

3.    Veksler's CFAA Claim Fails as a Matter of Law.....................21

    a.    Veksler failed to demonstrate any loss or damage.........22

    b.    Wipro did not knowingly and/or intentionally access Veksler's computer...............................................23

VIII.  CONCLUSION................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

Amorgianos v. Nat'l R.R. Passenger Corp.,
  303 F.3d 256 (2d Cir. 2002) ...........................................................14

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986)..........................................................................6

Cohen v. Casper Sleep, Inc.,
  No. 17-CV-9325, 2018 U.S. Dist. LEXIS 116372
  (S.D.N.Y. July 12, 2018) .................................................................20

Democratic Nat'l Comm. V. Russian Fed'n,
  392 F. Supp. 3d 410 (S.D.N.Y. 2019) ..............................................17

Fraser v. Nationwide Mut. Ins. Co.,
  352 F.3d 107 (3d Cir. 2003) ............................................................18

Garcia v. City of Laredo Texas,
  702 F.3d 788 (5th Cir. 2012) ...........................................................20

Goodman v. Goodman,
  No. 21-CV-10902, 2022 U.S. Dist. LEXIS 230085
  (S.D.N.Y. Dec. 21, 2022) .......................................................... 20, 21

In re DoubleClick Inc. Privacy Litigation,
  154 F. Supp. 2d 497 (S.D.N.Y. 2001) ......................................... 19, 23

Konop v. Hawaiian Airlines, Inc.,
  302 F.3d 868 (9th Cir. 2002) ...........................................................18

Kulak v. City of New York,
  88 F.3d 63 (2d. Cir. 1996) .................................................................6

Luis v. Zang,
  833 F.3d 619 (6th Cir. 2016) ...........................................................18

McCullock v. H.B. Fuller Co.,
  61 F.3d 1038 (2d Cir. 1995) ............................................................14

New Orleans Emples. Ret. Sys. v. Omnicom Grp., Inc.
  (In re Omnicom Grp., Inc. Sec. Litig.),
  597 F.3d 501 (2d Cir. 2010) ............................................................14

Obeid on behalf of Gemini Real Estate Advisors LLC v. La Mack,
  No. 14-CV-649, 2017 U.S. Dist. LEXIS 49144
  (S.D.N.Y March 31, 2017) ...................................................................20

Orenshteyn v. IBM,
  979 F. Supp. 2d 448 (S.D.N.Y. 2013) ................................................14

Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC,
  587 F. Supp. 2d 548 (S.D.N.Y. 2008) ................................................19

Raskin v. Wyatt Co.,
  125 F.3d 55 (2d Cir. 1997) ............................................................ 14, 15

Register.com, Inc. v. Verio. Inc.,
  356 F.3d 393 (2d Cir. 2004) .......................................................... 22, 23

Steve Jackson Games, Inc. v. U.S. Secret Service,
  36 F.3d 457 (5th Cir. 1994) ................................................................18

Theodore Arts, & Airiso, Inc. v. Failsafe Air Safety Sys.,
  No. 06-CV-523A(F), 2008 U.S. Dist. LEXIS 132589
  (W.D.N.Y. Mar. 28, 2008) .............................................................. 20, 21

United States v. Steiger,
  318 F.3d 1039 (11th Cir. 2003) .........................................................18

United States v. Townsend,
  987 F.2d 927 (2d Cir. 1993) .............................................................. 9, 24

Weinstock v. Columbia Univ.,
  224 F.3d 33 (2d Cir. 2000) ...................................................................6

**Statutes & Other Authorities:**

18 U.S.C. § 1030................................................................................1

18 U.S.C. § 1030(a)(2)(C) ......................................................... 8, 9, 23

18 U.S.C. § 1030(a)(5)(A) ....................................................... 8, 22, 23

18 U.S.C. § 1030(a)(5)(B) .................................................... 8, 9, 22, 23

18 U.S.C. § 1030(a)(5)(C) .................................................... 8, 9, 22, 23

18 U.S.C. § 1030(e)(8).......................................................................22

18 U.S.C. § 1030(e)(11)......................................................................22

iv

18 U.S.C. § 1030(g) ................................................................ 22, 23

18 U.S.C. § 2510 ................................................................ 1, 8, 17

18 U.S.C. § 2510(4) ......................................................................17

18 U.S.C. § 2510(15) ....................................................................20

18 U.S.C. § 2511 ................................................................ 1, 8, 17

18 U.S.C. § 2511(1)(a) ............................................................ 8, 17

18 U.S.C. § 2701(a) ................................................................ 8, 19

18 U.S.C. § 2707 ..........................................................................1

Fed. R. Civ. P. 56(a) ......................................................................6

Orin S. Kerr, <u>A User's Guide to the Stored Communications Act,
    and a Legislator's Guide to Amending It,</u>
    72 Geo. Wash. L. Rev. 1213 (2004) ..........................................21

Oxford English Dictionary ..............................................................3

# I.
## PRELIMINARY STATEMENT

The issues in this matter are simple, Plaintiff-Appellant Elvira Veksler's ("Veksler") claims flow from unsupported allegations that Defendant-Appellee Wipro, LLC ("Wipro") intentionally installed a mobile-device management ("MDM") application called JAMF and other software programs onto Veksler's computer without her knowledge or consent so that Wipro, for reasons unknown, could access her personal files/data. On that basis, the District Court (Oetken, J.), in a 9-page well-reasoned decision, correctly dismissed the Second Amended Complaint ("SAC") against Wipro for (i) violations of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510-2511; (ii) violations of the Stored Communications Act ("SCA"), 18 U.S.C. § 2707; and (iii) violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. (A.568-69.) Given the dismissal of the federal claims, the District Court also declined to exercise supplemental jurisdiction over Veksler's state law claims against Wipro. (A.570.) The District Court properly concluded that the ECPA, SCA, and CFAA prohibit intentional conduct (A.566) and that "no rational factfinder could conclude that Wipro acted intentionally." (A.568-69.)

1

## II.
## STATEMENT OF THE ISSUES

1.    Whether the District Court properly granted summary judgment to Wipro where the undisputed evidence shows that:

a. Wipro did not intentionally install JAMF and CrowdStrike Falcon Sensor ("CrowdStrike") onto Veksler's computer;

b. Wipro did not utilize JAMF and CrowdStrike to intentionally intercept and/or actively monitor Veksler's information and/or data on her computer; and

c. Veksler's ECPA, SCA, and CFAA claims against Wipro fail as a matter of law.

## III.
## STATEMENT OF THE CASE

### A.    PROCEDURAL HISTORY

Veksler filed suit on July 18, 2022. (A.2.) The operative SAC was filed on May 22, 2023 alleging violations of the ECPA, SCA, CFAA, and state law claims against Wipro. (A.11-30.) On June 16, 2023, Wipro filed its Answer to the SAC. (A.31-37.) On March 20, 2024, Wipro moved for summary judgment. (A. 38-39.)

On February 10, 2025, the District Court granted Wipro's motion for summary judgment. (A.562-70.) Viewing the evidence in the light most favorable to Veksler, the District Court held that (i) Veksler failed to present any evidence that Wipro intended to install JAMF or any other program; (ii) Veksler's expert's

2

conclusion on how JAMF ended up on Veksler's computer was not credible; (iii) Veksler failed to present any evidence or claim that Wipro intended to cause damage to her computer; and (iv) no rational factfinder could conclude that Wipro acted intentionally. (A.568-69.) Judgment was entered on February 10, 2025. (A.571.)

**IV.**
**STATEMENT OF FACTS**

Veksler worked briefly as a freelance content writer for Wipro from approximately July 16, 2021 to November 21, 2021. (A.12, ¶8.) Veksler was paid by Creative Circle, a recruiting and consulting services company. (Id.) However, Wipro directed Veksler's assignments. (Id.) Because Veksler worked as a freelancer, she used her own personal computer during the short duration of her assignment with Wipro. (A.13, ¶10.) To access Wipro's environment, Veksler was provided a web-based link to access her Wipro e-mail ID with a username. (A.52-53 11:20-25, 12:2-3.) Veksler was only provided access to her Wipro e-mail via webmail.[1] (A.54 15:13-14.) Freelancers are instructed to access documents via webmail and not to download anything. (A.56 22:7-13.)

On or about February 10, 2022, Veksler contacted Francesca Nicita ("Nicita") of Wipro stating that she was unable to access her laptop and was requesting

---

[1] Webmail is defined by Oxford English Dictionary as "A system that allows a user to access emails via a web browser, as opposed to downloading them to his or her own computer."

3

assistance from someone at Wipro to resolve the issue. (A.83.) Wipro determined that JAMF, Wipro's security management tool, was installed on Veksler's computer. (A.70, A.72.) Nicita stated in an internal email to another Wipro employee that "[Wipro] provided [Veksler] access via webmail; (Wipro never touched her laptop – never downloaded any programs)." (A.73.) Between February 10, 2022, to February 16, 2022, Wipro employees were determining how to remove JAMF from Veksler's laptop as Veksler's ADID (Wipro credentials) were deactivated and to remove it without remotely wiping Veksler's laptop as there were internal concerns of the possible risk of Wipro's data leakage. (A.58-73, A.78-79, A.85-86, A.96-101.) On or about February 16, 2022, Wipro unenrolled JAMF and removed the Wipro profiles from Veksler's computer. (A.62.) Veksler resumed her normal activities on her laptop without incident. (A.200 85:10-12.)

As detailed further below, JAMF could not be installed onto Veksler's computer without her knowledge and consent. Veksler had to knowingly enroll and accept the terms of the JAMF End User Licensing Agreement ("EULA"). JAMF is an MDM that allows organizations to secure their data and systems on Apple computers. (A.121.) JAMF and other MDMs allow corporations to manage end user security, through tools that "automate configuring passcode settings, Wi-Fi passwords and VPN (virtual private network) configurations." (Id.) "[JAMF] can also be used to restrict items such as device features like the App Store, web

4

browsers or the ability to rename a device." (Id.) JAMF and other MDMs also allow corporations to take specific actions, such as putting a device in "lost mode" or performing a remote wipe or upgrade. (Id.) For corporate-owned devices, JAMF can be pre-installed and automatically enrolled when the computer is turned on by the end user. (A.126.) But personally owned devices must go through manual enrollment where "[u]sers install the MDM profile by visiting the enrollment portal in the Settings app of their device." (Id.)

JAMF allows corporate IT departments to protect and secure corporate data, but as JAMF's own publication states,

> IT admins *cannot*:
> - Erase private data like photos, personal mail, or contacts
> - Remove any personal apps
> - View any private data including the names of personal apps
> - Restrict the usage of the device or limit the personal apps that can be installed
> - Track the location of the device
> - Remove anything installed by the user
> - Collect the user's information from the device

(A.146.)

Veksler's baseless theory of this matter is that Wipro intentionally installed JAMF and CrowdStrike onto her computer without her knowledge or consent. But, Veksler was and is unable to refute any of Wipro's arguments with even any credible evidence to substantiate her claims other than Veksler's own say so which the

5

District Court properly concluded was "at best a conclusory denial of the possibility that she accidentally downloaded JAMF." (A.568.)

## V.
## STANDARD OF REVIEW

Summary judgment is appropriate where the evidence, taken in a light most favorable to the non-moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. at 325. "Mere conclusory allegations, speculation, or conjecture will not avail a party resisting summary judgment." Kulak v. City of New York, 88 F.3d 63, 70 (2d. Cir. 1996).

The District Court's grant of summary judgment is reviewed de novo. Weinstock v. Columbia Univ., 224 F.3d 33, 40 (2d Cir. 2000).

## VI.
## SUMMARY OF ARGUMENT

There is no genuine issue of material fact, and therefore summary judgment is appropriate.

First, summary judgment was properly granted because Wipro did not

intentionally access Veksler's computer. Veksler largely ignores the controlling case law, which mandates dismissal under precisely these circumstances.

Second, Veksler's arguments that summary judgment was precluded because specific documents exchanged by Wipro in discovery create a genuine issue of material fact are fatally flawed. The "policies" that Veksler relies on do not remotely evidence that the software programs at issue monitor live operations or intercept electronic communications or even have the capability of doing either. Veksler has never even once specified throughout this entire litigation and now appeal which documents, personal data, and/or emails Wipro has intercepted, viewed, copied, downloaded, and/or modified.

Third, Veksler's argument that summary judgment was precluded by virtue of conflicting expert reports fails. While Veksler and Wipro each retained their own expert in this matter, Veksler's expert failed to perform a forensic examination of Veksler's computer to demonstrate that Wipro engaged in any of the conduct in which Veksler accuses Wipro of engaging in. Additionally, Veksler's expert failed to cite any evidence or provide a basis by which he reached the conclusions set forth in his expert report.

Lastly, summary judgment was properly granted because even if Veksler was able to create a genuine issue of material fact as to whether Wipro acted intentionally, Veksler's ECPA, SCA and CFAA claims still fail as a matter of law.

Therefore, the District Court's decision should be affirmed.

## VII.
## ARGUMENT

### A. VEKSLER CANNOT SHOW A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER WIPRO ACTED INTENTIONALLY

Veksler is unable to prevail on her claims as Veksler is unable to prove, among other elements, that (i) Wipro *intentionally* installed JAMF and/or CrowdStrike on her computer; and (ii) Wipro *intended* to cause damage to her computer. Intentional conduct is a prerequisite for liability under the ECPA (18 U.S.C. § 2511(1)(a)), SCA (Id. § 2701(a)), and CFAA (Id. §§ 1030(a)(5)(A) – (C), 1030(a)(2)(C)).

The ECPA, 18 U.S.C. §§ 2510-2511, creates a civil cause of action against persons who *intentionally* "intercept" electronic communications. Section 2511(1)(a) imposes liability only on those who act intentionally. The SCA prohibits "*intentionally* access[ing] without authorization a facility through which electronic communications are provided" or doing so in excess of authorization and, "thereby obtain[ing], alter[ing], or prevent[ing] authorized access to a wire or electronic communication while it is in electronic storage." 18 U.S.C. § 2701(a) (emphasis added). The CFAA penalizes a party that: (i) "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, *intentionally* causes damage … to a protected computer" (18 U.S.C. § 1030(a)(5)(A) (emphasis added)); (ii) "*intentionally* accesses a protected computer without

authorization, and as a result of such conduct, recklessly causes damage" (18 U.S.C. § 1030(a)(5)(B) (emphasis added)); (iii) "*intentionally* accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss" (18 U.S.C. § 1030(a)(5)(C) (emphasis added)); or (iv) "*intentionally* accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer" (18 U.S.C. § 1030(a)(2)(C) (emphasis added)).

The ECPA, the SCA and the CFAA contain such parallel language in that they each require a showing of intentional conduct in order for a violation to occur. A party acts "intentionally" if they act deliberately and purposefully. United States v Townsend, 987 F.2d 927, 930 (2d Cir 1993). A "defendant's act must have been the product of defendant's conscious objective rather than the product of a mistake or an accident." Id. The District Court correctly found that "no rational factfinder could conclude that Wipro acted intentionally." (A.568-69.) Wipro provided the District Court with a myriad of evidence, including an expert report by Wipro's expert FTI Consulting ("FTI"), sworn testimony from Wipro's Chief Information Officer Rajiv Pillai ("Rajiv"), internal emails between Wipro employees, and documentation from both Apple and JAMF. (A.567.) Whereas, Veksler merely relied on her own conclusory assertions/testimony rather than affirmative credible evidence to substantiate her claims against Wipro. (A.568.)

1. **Veksler's Evidence**

Veksler contends that "the District Court erred insofar as it found that Veksler has produced no evidence beyond her own conclusory assertions that Wipro had the conscious objective of installing either JAMF or CrowdStrike on her computer, much less of damaging her computer or data." (Opening Br. and Special App. for Pl.-Appellant ("Vek. Br.") 10-11) (citing A.568-69.) Veksler argues that her expert, Trony Clifton's ("Clifton") expert report "supported a finding that [Wipro] intentionally accessed [Veksler's] computer insofar as it 'pushed' the relevant software at issue onto [Veksler's] computer." (Vek. Br. 11) (citing A.171.) Veksler further argues that nowhere in Clifton's report is there any mention or indication that "Wipro's conduct was inadvertent or not done without the 'conscious objective' of installing either JAMF or CrowdStrike." (Vek. Br. 11).

Notably, Clifton's report makes no mention of whether JAMF and/or CrowdStrike was intentionally downloaded onto Veksler's computer. (See A.171-75.) Rather, Clifton states that the purpose of this report was to analyze and determine the following: (i) how Wipro accessed Veksler's computer; (ii) determine if there was any information deleted off of Veksler's computer; and (iii) what personal information Wipro has access to on Veksler's computer. (A.171.) Clifton further states that "[t]he evaluation of [Veksler's] laptop was not to perform a

forensic investigation." (Id.) Consequently, the District Court properly rejected the credibility of Clifton's expert report based on the following factors:

> While Clifton's expert report states that a "Jamf [sic] policy was pushed to [Veksler's] laptop," whether or not Wipro did this intentionally is beyond the scope of the report … Clifton cites no evidence or method by which he reached his conclusions, did not conduct an examination of Veksler's computer, and opines without any justification that JAMD was installed "[u]pon onboarding" in July 2021, when FTI's forensic examination showed that it was really installed months later.

(A.568 n.4.) (citing A.171-75 and A.209-10.)

### 2. **Wipro's Document Production**

Next, Veksler argues that JAMF and CrowdStrike were actively monitoring and intercepting Veksler's electronic communications on her computer. (Vek. Br. 11.) Veksler points to Wipro's Second Production of Documents, specifically the JAMF Data Collection Policy ("JAMF Policy") and CrowdStrike Prevention Policy for MAC Systems ("CrowdStrike Policy"). (Id.) First and foremost, JAMF, is a software program, ***not*** an electronic communication. "JAMF is a management tool which is used to give management settings on a Mac machine" and it functions to prevent any data leakage. (A.155-56 10:13-15, 11:2-5.) There is no evidence that JAMF has the capacity to contemporaneously capture information, signals, or emails. Moreover, JAMF disclaims the ability to monitor or access an end user's personal information. (A.146.) Indeed, despite Veksler's unsupported statement, nothing contained in the JAMF Policy evidences that JAMF monitors live operations

11

or intercepts electronic communications or even has the capability of doing either. (A.220-23.) Rather, the inventory items "collected" by JAMF relate to a computer's hardware information, including make; model; processor type; operating system; security; extension attributes; etc. (A.220-21.) Furthermore, Veksler fails to point to any specific information in the JAMF Policy that she claims reveals the extensive personal information that JAMF and/or Wipro was collecting, monitoring, and/or intercepting. This is because there is no such information contained in the policy.

Additionally, CrowdStrike is an intrusion detection software that monitors the processes that run on a computer. (A.530 64:6-8.) Veksler incorrectly relies on the fact that Wipro "maintained a browsing history for individuals who accessed URLs categorized as malicious by [Wipro's] security policies for 89 days" as her basis that Wipro was monitoring and intercepting Veksler's communications. (Vek. Br. 12.) Contrary to Veksler's assertions, CrowdStrike has ratings for websites and one of its functions is that CrowdStrike categorizes websites based on its intent. (A.531 69:18-23.) Rajiv testified that Wipro does not access data or browsing history but rather Wipro identifies "any URL that is [categorized as] malicious." (A.532-33 70:11-20, 70:25 – 71:2-3.) Clifton was asked about the functions CrowdStrike provides to companies and testified that:

> Crowd[Strike] can be the tool that blocks quarantine information coming into the environment via e-mail or any other type of environment or process…if you're on the internet and you go to a bad site … you can help block or notify or detect, if there's a known trojan

horse … on that website. … or also block you from a [phishing] scheme, onto a particular website.

(A.543 34:7-19.)

Further, Clifton's report states that CrowdStrike "is a security monitoring application to detect any unauthorized intrusion." (A.174.) However, Clifton's testimony and report completely contradict Veksler's assertions that CrowdStrike was intercepting electronic communications on her computer. Rather, CrowdStrike was monitoring for "unauthorized intrusion" not intercepting electronic communications. (Id.) Most significantly, Veksler continues to seemingly overlook the testimony that was elicited by her own expert. Specifically, Clifton testified that he was not able to establish or determine whether any of the information on Veksler's local hard drive was viewed, copied, downloaded or modified by Wipro. (A.188-90 63:20-25, 64:2-4, 64:22-25, 65:2-6.) Moreover, Veksler has failed to point to any specific emails, documents, or other such electronic communications that she alleges Wipro intentionally "intercepted" to create a genuine issue of material fact. Instead, Veksler mischaracterizes Wipro's Second Production of Documents (A.219-23) as her "evidence" that Wipro was monitoring and intercepting Veksler's electronic communications.

### 3. Conflicting Expert Reports

Veksler argues that the District Court erred in giving undue weight to Wipro's expert, FTI's expert report. (Vek. Br. 12.) "Generally, a court should not make

credibility determination about competing experts when deciding a summary judgment motion." Orenshteyn v. IBM, 979 F. Supp. 2d 448, 451 (S.D.N.Y. 2013). "Nevertheless, the mere existence of conflicting experts in a case is not a per se bar on the entry of summary judgment." Id. (citing New Orleans Emples. Ret. Sys. v. Omnicom Grp., Inc. (In re Omnicom Grp., Inc. Sec. Litig.), 597 F.3d 501, 512 (2d Cir. 2010); see also Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997) ("Although disputes as to the validity of the underlying data go to the weight of the evidence, and are for the fact-finder to resolve … questions of admissibility are properly resolved by the court.") (citing McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1044 (2d Cir. 1995)). "Because the purpose of summary judgment is to weed out cases in which 'there is no genuine issue as to any material fact' … it is appropriate for district courts to decide questions regarding the admissibility of evidence on summary judgment." Raskin, 125 F.3d at 66.

"If, after construing the expert reports in the non-movant plaintiff's favor, the court concludes that a report is 'insufficient to permit a rational juror to find in favor of the plaintiff, the court remains free to … grant summary judgment for defendant.'" Orenshteyn, 979 F. Supp. 2d at 451 (quoting Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002)). Veksler argues that the District Court improperly "weigh[ed] the conflicting expert reports against one another." (Vek. Br. 14.) Indeed, Veksler disregards two significant distinctions between FTI's expert

report and Clifton's expert report: (1) FTI, unlike Clifton, performed a forensic examination of Veksler's computer (<u>Compare</u> A.209 <u>and</u> A.171); and (2) FTI, unlike Clifton, was able to trace the installation of JAMF on October 13, 2021. (<u>Compare</u> A.209-10 <u>and</u> A.174.)

Veksler misinterprets the law that simply because she submitted an expert report, which conflicted with Wipro's expert report, that she created a genuine issue of material fact as to whether Wipro acted intentionally. (Vek. Br. 11-14.) Contrary to Veksler's arguments, "an expert's report is not a talisman against summary judgment." <u>Raskin</u>, 125 F.3d at 66.

Accordingly, Veksler's arguments on appeal lack merit and therefore, the Court should affirm the District Court's decision and judgment.

**B.**     **<u>VEKSLER'S ARGUMENT THAT THE DISTRICT COURT ERRED IN FINDING THAT THE INSTALLATION OF THE SOFTWARE IN QUESTION REQUIRED INTENTIONAL CONDUCT, AS OPPOSED TO THE ACTIVE MONITORING FUNCTION OF THE SOFTWARE ONCE INSTALLED ON VEKSLER'S COMPUTER ALSO FAILS</u>**

Veksler argues that the District Court erred by focusing its findings on whether Wipro intentionally installed JAMF and CrowdStrike on Veksler's computer as opposed to focusing its findings on once JAMF and CrowdStrike were installed on Veksler's computer whether "the subsequent monitoring and accessing of information itself was intentional." (Vek. Br. 14-15.) Veksler argues that the CrowdStrike policy revealed that specific settings within the CrowdStrike platform

were enabled and/or "set to 'extra aggressive' to ensure a thorough monitoring of [Veksler's] computer." (Vek. Br. 15-16.) Again, contrary to Veksler's assertions, the CrowdStrike Policy contains the functions that Wipro uses CrowdStrike for "to perform the end user intrusion detection" and the actions that CrowdStrike takes in response. (A.462 54:4-8, 54:17-21.) As previously discussed in detail, JAMF and CrowdStrike simply do not perform the functions which Veksler alleges.

Even if JAMF and/or CrowdStrike were able to perform the functions which Veksler alleges they do (which they do not), Veksler offers no plausible or conceivable motive for Wipro to engage JAMF or CrowdStrike in monitoring and/or accessing Veksler's personal information on her computer. Nor does Veksler offer any benefit that could credibly be derived by Wipro as a "conscious objective" to engage JAMF or CrowdStrike in monitoring and/or accessing Veksler's personal information on her computer. As previously stated, Veksler has yet to point to any specific emails, documents, or other such electronic communications that Wipro allegedly intentionally "intercepted" to create a genuine issue of material fact. Moreover, Veksler's own expert, Clifton, testified that he was unable to determine one way or another if *any* of the information on Veksler's local hard drive was viewed, copied, downloaded or modified by Wipro. (A.188-90 63:20-25, 64:2-4, 64:22-25, 65:2-6.)

Accordingly, Veksler's arguments on appeal lack merit and fail to create a

genuine issue of material fact, and therefore, the Court should affirm the District Court's decision and judgment.

## C. VEKSLER'S CLAIMS AGAINST WIPRO WOULD STILL FAIL AS A MATTER OF LAW EVEN IF THERE WAS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER WIPRO ACTED INTENTIONALLY

Even assuming that Veksler is able to influence this Court into finding that there is a genuine issue of material fact as to whether Wipro acted intentionally, Veksler's claims against Wipro still fail as a matter of law.

### 1. Veksler's ECPA Claim Fails as a Matter of Law

The ECPA, 18 U.S.C. §§ 2510-2511, creates a civil cause of action against persons who *intentionally* "intercept" electronic communications. Section 2511(1)(a) imposes liability only on those who act intentionally. The ECPA defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C.§ 2510(4). "The term 'intercept' is construed narrowly to require that the interception of an electronic communication be contemporaneous with the transmission of that communication." Democratic Nat'l Comm. V. Russian Fed'n, 392 F. Supp. 3d 410, 446 (S.D.N.Y. 2019) (internal quotation and citation omitted). While the Second Circuit has yet to address this issue, "[e]very circuit court to have considered the matter has held that an 'intercept' under the Act must occur

contemporaneously with transmission." Luis v. Zang, 833 F.3d 619, 627 (6th Cir. 2016) (citation and brackets omitted); see also Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 113-114 (3d Cir. 2003); United States v. Steiger, 318 F.3d 1039, 1048-49 (11th Cir. 2003); Konop v. Hawaiian Airlines, Inc., 302 F.3d 868, 878 (9th Cir. 2002); Steve Jackson Games, Inc. v. U.S. Secret Service, 36 F.3d 457, 461 (5th Cir. 1994). These circuit courts concluded that "intercept" only applies to "electronic communications" and not to "electronic storage", and therefore a communication may only be intercepted when it is "'in flight' before the communication comes to rest and ceases to be a communication." Luis, 833 F.3d at 628 (quoting Steve Jackson Games, 36 F.3d at 461-62).

As previously discussed, JAMF, is a software program, not an electronic communication. JAMF functions to prevent any leakage of Wipro's data . (A.155-56 10:24-25, 11:2-5.) There is no evidence that JAMF has the capacity to contemporaneously capture electronic communications and, more importantly, JAMF disclaims the ability to monitor or access an end user's personal information. (A.146.) Significantly, Veksler's expert, Clifton, concluded that Veksler's personal emails were never accessed (A.171) and that Wipro did not delete or remove any of Veksler's personal data from her computer. (A.174.) Clifton's conclusory assertion that Wipro administrators with access to JAMF "could view, copy, download or modify any personal data stored on [Veksler's] Macbook local hard drive," (Id) fails

18

to substantiate Veksler's assertions that Wipro *intentionally* accessed or intercepted Veksler's electronic communications.

As such, Veksler (i) cannot demonstrate that Wipro intercepted her personal emails, as Wipro never accessed Veksler's personal emails; (ii) cannot demonstrate that Wipro intercepted Veksler's personal data by either viewing, copying, downloading or modifying it; and/or (iii) cannot demonstrate that JAMF has the capacity to contemporaneously capture information or signals. Based on the foregoing, Veksler's ECPA claim against Wipro fails as a matter of law and as such, the Court should affirm the District Court's decision and judgment.

### 2.    Veksler's SCA Claim Fails as a Matter of Law

The SCA prohibits "*intentionally* access[ing] without authorization a facility through which electronic communications are provided" or doing so in excess of authorization and, "thereby obtain[ing], alter[ing], or prevent[ing] authorized access to a wire or electronic communication while it is in electronic storage." 18 U.S.C. § 2701(a) (emphasis added). The SCA "aims to prevent hackers from obtaining, altering or destroying certain stored electronic communications." Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 587 F. Supp. 2d 548, 555 (S.D.N.Y. 2008) (quoting In re DoubleClick Inc. Privacy Litigation, 154 F. Supp. 2d 497, 507 (S.D.N.Y.2001)). "Thus, a person violates the SCA if she accesses an electronic communication service, or obtains an electronic communication while it is still in

electronic storage, without authorization." Id. The SCA does not provide a definition of "facility" but "electronic communications service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). "Courts have interpreted the [SCA] to apply to providers of a communication service such as telephone companies, Internet or e-mail service providers, and bulletin board services." Goodman v. Goodman, No. 21-CV-10902, 2022 U.S. Dist. LEXIS 230085, at *52 (S.D.N.Y. Dec. 21, 2022) (quoting Garcia v. City of Laredo Texas, 702 F.3d 788, 792 (5th Cir. 2012)).

"[C]ourts in this District have continuously declined to regard personal computers… as facilities for SCA purposes." Id. at 53. See, e.g., Cohen v. Casper Sleep, Inc., No. 17-CV-9325, 2018 U.S. Dist. LEXIS 116372, at *5 (S.D.N.Y. July 12, 2018) ("Judges in this District routinely hold that communications stored on personal devices are not held in electronic storage"); Obeid on behalf of Gemini Real Estate Advisors LLC v. La Mack, No. 14-CV-649, 2017 U.S. Dist. LEXIS 49144, at *29 (S.D.N.Y March 31, 2017) (stored communications under the SCA are "emails stored on an electronic communication service provider's systems… as opposed to emails stored on a personal computer"). "While a home computer configured as a mail server could provide [electronic communication service] in theory, the home computer of an end user is not protected by the SCA." Theodore Arts, & Airiso, Inc. v Failsafe Air Safety Sys., No. 06-CV-523A(F)), 2008 U.S. Dist.

LEXIS 132589, at *18 (W.D.N.Y. Mar. 28, 2008) (quoting Orin S. Kerr, <u>A User's</u> <u>Guide to the Stored Communications Act, and a Legislator's Guide to Amending It</u>, 72 Geo. Wash. L. Rev. 1213 (2004)).

Veksler alleges that her personal emails and electronic communications were maintained in an electronic storage facility that were improperly accessed by Wipro in violation of the SCA. (A.19 ¶37.) As previously discussed, Wipro did not have access to Veksler's personal emails. (A.171.) Moreover, Veksler's computer is not considered an electronic storage facility under the SCA (<u>Goodman,</u> 2022 U.S. Dist. 230085 at *53) nor is Veksler's computer protected under the SCA (<u>Theodore Arts,</u> 2008 U.S. Dist. 132589 at *18).

Based on the foregoing, Veksler's SCA claim against Wipro fails as a matter of law and as such, the Court should affirm the District Court's decision and judgment.

### 3. Veksler's CFAA Claim Fails as a Matter of Law

Even if this Court finds that there is a dispute as to whether Veksler installed JAMF onto her computer, the CFAA requires that Veksler demonstrate that Wipro acted knowingly and/or intentionally by either intentionally causing damage, recklessly causing damage and/or intentionally obtaining information from a computer. Veksler failed to demonstrate either.

### a. **Veksler failed to demonstrate any loss or damage**

The CFAA penalizes a party that: (i) "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, *intentionally* causes damage … to a protected computer" (18 U.S.C. § 1030(a)(5)(A) (emphasis added)); (ii) "*intentionally* accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage" (18 U.S.C. § 1030(a)(5)(B) (emphasis added)); or (iii) "*intentionally* accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss" (18 U.S.C. § 1030(a)(5)(C) (emphasis added)).

The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). "Damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). "[T]o succeed on the merits of a CFAA claim, [plaintiff] must prove 'damage or loss' of at least $ 5,000 attributable to an alleged violation of the CFAA." Register.com, Inc. v. Verio. Inc., 356 F.3d 393, 439 (2d Cir. 2004) (quoting 18 U.S.C. § 1030(g)). "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator

to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). The plain language of the statute demonstrates that emotional distress damages are not permitted. See In re DoubleClick Inc. Privacy Litigation, 154 F. Supp. 2d at 524 n.33 ("only economic losses are recoverable under 18 U.S.C. § 1030(g)").

On January 30, 2023, in response to Wipro's Interrogatories, wherein Wipro requested that Veksler provide a computation of Veksler's alleged damages, Veksler responded that she and her counsel have not yet retained an expert to assist them with a computation of Veksler's damages. (A.193.) Additionally, Wipro's counsel asked Clifton, during his deposition, what his fee for this matter was, wherein he responded that he had not really discussed it with his client. (A.184 8:21-25.) As all discovery deadlines have well passed and Veksler never supplemented her response, Veksler cannot demonstrate that she sustained a damage or loss of at least $5,000. Register.com, Inc., 356 F.3d at 439. As such, Veksler did not suffer any "damage" or loss as required under 18 U.S.C. §§ 1030(a)(5)(A), 1030(a)(5)(B), and/or 1030(a)(5)(C).

### b. Wipro did not knowingly and/or intentionally access Veksler's computer

The CFAA also penalizes a party that "*intentionally* accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer." 18 U.S.C. § 1030(a)(2)(C) (emphasis added). A party

acts "intentionally" if they act deliberately and purposefully. <u>Townsend</u>, 987 F.2d at 930. A "defendant's act must have been the product of defendant's conscious objective rather than the product of a mistake or an accident." <u>Id.</u>

As part of Wipro's document production, and through depositions of Wipro employees, Veksler cannot cite to any undisputed evidence that Wipro knowingly and/or intentionally installed JAMF onto her computer with an intent to cause damage or recklessly cause damage. Rajiv testified that he was not aware of Wipro receiving any complaints from contractors or freelancers regarding their ability to use their personal computer after their work with Wipro had ended. (A.163-64 30:14-25, 31:2-4.) Nicita also wrote in an email on or about March 3, 2022, to Nicole Kramer of Creative Circle stating, "I am not sure how [Elvira Veksler] downloaded a Wipro program on her laptop (our IT department would not touch her asset as it did not belong to us) …Even my IT department were perplexed how she downloaded one of our programs." (A.85-86.) Contrary to Veksler's assertions, JAMF's primary function is to ensure security of a device, access to corporate data and resources, transparency of IT management capabilities for a personally owned devices, and ensuring protection of the user's personal data. (A.147.) Therefore, Veksler cannot demonstrate that Wipro intentionally installed JAMF with an intent to cause damage and/or recklessly cause damage to her computer.

Veksler also cannot cite to any undisputed evidence that Wipro intentionally installed JAMF onto her computer to obtain or access information from her computer. Veksler implausibly claims that Wipro obtained information from her computer, including monitoring and accessing live operations of Veksler's computer, personal data, personal email and keystrokes. (A.22 ¶48.) Veksler's claims are patently false. In fact, JAMF is *not* capable of monitoring and accessing live operations on a user's computer, accessing personal data, and/or keystrokes. (A.146-47.) Additionally, Veksler's expert concluded that Veksler's personal emails were never accessed by Wipro. (A.171.) Moreover, Veksler provides absolutely no justification or basis why Wipro would ever have intentionally installed JAMF onto her computer to obtain information from her computer.

Based on the foregoing, Veksler's CFAA claim against Wipro fails as a matter of law and as such, the Court should affirm the District Court's decision and judgment.

## VIII.
## <u>CONCLUSION</u>

Wipro respectfully requests that this Court affirm the decision of the District Court.

Dated: New York, New York
August 22, 2025

25

ROPERS MAJESKI PC

By: _____
    Ryanne A. Hankla
    ryanne.hankla@ropers.com
    Jung H. Park
    Jung.park@ropers.com
    Andrew L. Margulis
    Andrew.margulis@ropers.com
    800 Third Avenue, 29th Floor
    New York, NY  10022
    Telephone:  212.668.5927
    Facsimile:  212.668.5929

Attorneys for Defendant Wipro, LLC

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i), and the word limit of Fed. R. App. P. 32(a)(7)(A), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,492 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word with 14 characters per inch and Times New Roman.

Dated: New York, New York
      August 22, 2025

                                    _____
                                      Ryanne A. Hankla